UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REGINALD HART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 01217 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| AMAZON.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Reginald Hart ("Plaintiff") brings his amended complaint in this action against Defendant
Amazon.com, Inc. ("Amazon")[1] alleging trademark infringement, unfair competition, and false
designation of origin under Illinois common law and the Lanham Act, 15 U.S.C. § 1125. (R. 68,
Am. Compl.) Plaintiff also alleges negligence, promissory estoppel, negligent infliction of
emotional distress, and violations of the Illinois Consumer Fraud and Deceptive Business
Practices Act ("ICFA"), 815 ILL. COMP. STAT. 505/1 *et seq.*, the Illinois Uniform Deceptive
Trade Practices Act ("IUDTPA"), 815 ILL. COMP. STAT. 510/1 *et seq.*, and the Illinois Right of
Publicity Act ("IRPA"), 765 ILL. COMP. STAT. 1075/1 *et seq.* (R. 68, Am. Compl.) Presently
before the Court is Amazon's motion to dismiss pursuant to Federal Rule of Civil Procedure
12(b)(6). (R. 69, Mot.) For the reasons stated below, the motion is granted.

## RELEVANT FACTS

Plaintiff's amended complaint includes many of the same facts as his original complaint,
which have already been explained in this Court's prior opinion, *Hart v. Amazon.com*, No. 15-C-

---

[1] Plaintiff's original complaint identified Glenda Scales as a co-defendant, (R. 1, Compl. ¶ 1); however,
the amended complaint neither identifies Ms. Scales as a defendant nor asserts any claims against her, (R.
68, Am. Compl.). Thus, the Court concludes that Plaintiff has abandoned his claims against Ms. Scales
and the Court will dismiss her from this case.

01217, 2015 WL 8489973, at *1 (N.D. Ill. Dec. 8, 2015); accordingly, only a brief recitation of the relevant facts is required. Plaintiff, a resident of Illinois, has authored two books: *Vagabond Natural* and *Vagabond Spiritual*. (R. 68, Am. Compl. ¶¶ 1-2.) These books focus on Plaintiff's experiences with homelessness and seek to "raise money and bring an end to vagabondage . . . ." (*Id.* ¶ 2.) Plaintiff has "never sold *Vagabond Spiritual* in the market place" and has only distributed a limited number of copies of *Vagabond Natural*. (*Id.* ¶¶ 45-46, 60.)

Despite the limited distribution of Plaintiff's books, Plaintiff discovered copies of *Vagabond Natural* and *Vagabond Spiritual* listed for sale on Amazon's website. (*Id.* ¶¶ 45-46.) Plaintiff believes that these copies were counterfeits. (*Id.* ¶¶ 39-47.) Throughout March 2014, Plaintiff submitted a series of electronic notices to Amazon through its "Report Infringement" webpage claiming that Amazon was selling "unlawful reproductions" of his books. (*Id.* ¶¶ 39-41.) Plaintiff also sent Amazon a letter dated March 23, 2014, asking Amazon to remove the books from its website, disclose how long the books had been available for sale, and specify how many copies had been sold. (*Id.* ¶ 47; R. 68, Ex. 8 to Am. Compl.) Amazon responded with a letter that "implied . . . it was solely a search engine and not an online retailer." (R. 68, Am. Compl. ¶ 47.) Approximately nine months later, Plaintiff submitted another electronic notice asking Amazon to remove the books from its website because *Vagabond Natural* and *Vagabond Spiritual* "[had] never been published to the public at large." (*Id.* ¶ 42; R. 68, Ex. 4 to Am. Compl.)

On January 21, 2015, Amazon sent Plaintiff an email informing him that it was "in the process of removing" *Vagabond Natural* and *Vagabond Spiritual* from its website and that "[i]t typically takes 2-3 days for a listing to disappear once it has been removed." (R. 68, Am. Compl. ¶¶ 80, 90; R. 68, Ex. 10 to Am. Compl.) Both books remained on Amazon's website until March

25, 2015. (R. 68, Am. Compl. ¶ 103.) Amazon provided Hart with its sales records, which indicate that there were a total of six sales of Hart's books by third parties through Amazon's website. (R. 68, Ex. 7 to Am. Compl.) Plaintiff claims that Amazon's conduct caused him "mental anguish" and violated his trademark rights. (*Id.* ¶¶ 77, 83, 87, 93, 123.)

## PROCEDURAL HISTORY

Plaintiff first filed a *pro se* complaint on February 9, 2015, against Amazon and "All Unknown and Known Third Party Agent Sellers of Amazon" alleging direct, contributory, and vicarious copyright infringement under the Federal Copyright Act, 17 U.S.C. § 101 *et seq.*, negligent spoliation of evidence, aiding and abetting "wrongful acts," intentional infliction of emotional distress, and a violation of the IRPA. *Hart*, 2015 WL 8489973, at *2. On March 15, 2015, Plaintiff moved to have counsel appointed. (R. 28, Min. Entry.) The Court granted Plaintiff's motion and counsel appeared on Plaintiff's behalf. (*Id.*; R. 30, Appearance.) However, appointed counsel subsequently moved to withdraw because Plaintiff "insist[ed] upon presenting a claim that, in [counsel's] view, [was] not warranted under existing law and [could not] be supported by a reasonable argument for an extension, modification, or reversal of existing law." (R. 37, Mot. to Withdraw.) Following an unsuccessful settlement conference with Amazon, the Court granted counsel's motion to withdraw. (R. 41, Min. Entry.)

On August 19, 2015, Amazon moved for judgment on the pleadings arguing that Plaintiff's claims were "legally and factually deficient." (R. 43, Def.'s Mot. at 15.) The Court granted Amazon's motion because Plaintiff failed to adequately plead his claims. *Hart*, 2015 WL 8489973, at *9. However, this Court granted him leave to file an amended complaint consistent with the Court's opinion. *Id.* On January 4, 2016, Plaintiff filed an amended complaint alleging negligence (Count I), "trademark infringement, unfair competition, and false designation of

origin" (Count II), a violation of the ICFA (Count III), a violation of the IUDTPA (Count IV), promissory estoppel (Count V), a violation of the IRPA (Count VI), and negligent infliction of emotional distress (Count VII). (R. 68, Am. Compl. ¶¶ 48-123.) Amazon again moves to dismiss. (R. 69, Mot.; 70, Mem.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (alterations and citation omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this standard, the Court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chi.*, 810 F.3d 476, 480-81 (7th Cir. 2016). However, the Court "need not accept as true any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements." *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014) (citation and internal quotation marks omitted).

Because Plaintiff is proceeding *pro se*, the Court construes his complaint "liberally" and holds it to a "less stringent standard than formal pleadings drafted by lawyers." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citation omitted). However, while a *pro se* litigant's pleadings are held to a lesser standard, the litigant must still comply with the Court's rules and procedures. *See McInnis v. Duncan*, 697 F.3d 661, 665 (7th Cir. 2012) ("As we often have

reminded litigants, even those who are pro se must follow court rules and directives."); *see also McNeil v United States*, 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by [*pro se* litigants] . . . be liberally construed, . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." (internal citations omitted)).

## ANALYSIS

### I. Lanham Act and IUDTPA Claims

The Court will first address Plaintiff's Lanham Act claim and then move to the remaining state law claims. Count II of the amended complaint includes claims for trademark infringement, unfair competition, and false designation of origin under the Lanham Act and Illinois common law. (R. 68, Am. Compl. ¶¶ 68-77.) In addition, Plaintiff asserts an IUDTPA claim; however, the allegations are nearly identical to those in the Lanham Act claims. (*Id.* ¶¶ 85-87.) Amazon argues that Plaintiff fails to state claims under the Lanham Act, common law, or the IUDTPA. (R. 70, Mem. at 4-8; *see also id.* at 11-12.) As discussed below, Plaintiff's claims are insufficient because he does not allege that Amazon's actions are likely to cause confusion among consumers.

Plaintiff's *pro se* complaint is at times difficult to understand, but his claims ultimately revolve around the same conduct: Amazon allegedly engaged in counterfeiting and displayed and sold counterfeit copies of his books featuring his tradename and trademark. (R. 68, Am. Compl. ¶¶ 1, 47, 69, 70, 86.) Plaintiff claims that his trademarks include the name "Henrietta Press" and a symbol "comprised of an [o]pen [b]ook with [p]ages emerging therefrom." (*Id.* ¶ 69.) Plaintiff's counterfeiting claim focuses on three different allegations. First, Amazon allegedly sold counterfeit copies of Hart's books and thereby improperly used his tradename and

trademark that were affixed to the allegedly counterfeit versions. (*Id.* ¶¶ 75-77, 81.) Second, Amazon allegedly caused confusion in the marketplace by suggesting that Plaintiff is affiliated with or approves of Amazon. (*Id.* ¶¶ 71, 75.) Third, Amazon allegedly caused confusion in the marketplace by suggesting that the copies of Hart's books sold through Amazon were authentic. (*Id.* ¶ 72.) In support of his IUDTPA claim, Plaintiff similarly alleges that Amazon "engaged in deceptive acts, including but not limited to misrepresenting to Consumers that Henrietta Press is the source of the Vagabond Products and that Henrietta Press approves of, or is affiliated . . . with defendant; which it is not." (*Id.* ¶ 85.)

The Lanham Act protects registered marks from interference by state legislation, prevents unfair competition, and protects against fraud by the use of copies or counterfeits of marks. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Section 1125(a) of the Lanham Act imposes liability on:

> (1) Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . .

15 U.S.C. § 1125(a)(1). Such person "shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." *Id.*[2]

To state a claim under 15 U.S.C. § 1125(a)(1) of the Lanham Act, "a plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001). The same analysis applies to Plaintiff's common law trademark claim, unfair competition claim, and IUDTPA claim. *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700-01 (7th Cir. 2014) (likelihood of confusion analysis applies equally to Lanham Act and state law unfair competition claims); *TMT N. Am., Inc. v. Magic Touch GmbH,* 124 F.3d 876, 881 (7th Cir. 1997) ("federal and state laws regarding trademarks and related claims of unfair competition are substantially congruent"); *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 136 F. Supp. 3d 911, 917 (N.D. Ill. 2015) ("Counts III and IV are allegations of violations of the Lanham Act and the [IUDTPA] respectively and can be analyzed using the same framework."). While Amazon's motion does not expressly concede that Hart has alleged a trademark or tradename entitled to protection, it does not substantively address this element in its motion. (R. 70, Mem. at 5.) Thus, the Court turns to whether Plaintiff adequately alleges that Amazon's use of Plaintiff's trademark is likely to cause confusion among consumers.

First, Amazon argues that its actions are protected by the first-sale doctrine and cannot as a matter of law cause a likelihood of consumer confusion. (*Id.* at 5-6.) Specifically, Amazon argues that Plaintiff "does not plausibly allege that the books sold through Amazon were

---

[2] While Plaintiff does not identify which section of the Lanham Act his claims are premised on, his response cites to 15 U.S.C. § 1125. (R. 73, Resp. at 9.) Because Plaintiff does not allege that he has a registered trademark, he may not bring trademark infringement claims under 15 U.S.C. § 1114(1). *See Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 593 (7th Cir. 2008) (15 U.S.C. § 1114(a) does not protect unregistered marks). As such, the Court looks to the requirements of U.S.C. § 1125(a)(1).

counterfeits" and further that he "cannot control the use of a trademark on authentic copies of his books in the resale market." (*Id.* at 5.)

A trademark owner's right under the Lanham Act to control distribution of its own products is limited by the "first sale" doctrine. *See Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073, 1074 (9th Cir. 1995); *Standard Process, Inc. v. Banks,* 554 F. Supp. 2d 866, 869 (E.D. Wis. 2008) (following *Sebastian*); *Quill Corp. v. NADA Scientific Ltd.*, No. 97 C 7461, 1998 WL 295502, at *2 (N.D. Ill. May 21, 1998) (following *Sebastian*). "Beginning with *Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924), courts have consistently held that, with certain well-defined exceptions, the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Sebastian*, 53 F.3d at 1074. Under the doctrine, "[o]nce a trademark owner sells his product, the buyer may resell the product under the original mark without incurring any trademark liability." *Enesco Corp. v. K's Merch. Mart*, No. 99 C 1070, 2000 WL 1800640, at *12 (N.D. Ill. Aug. 29, 2000) (citation omitted). Thus, resale by the first purchaser of the original article under the producer's trademark is generally neither trademark infringement nor unfair competition. *See Sebastian*, 53 F.3d at 1074.

Even accepting Plaintiff's factual allegations as true and construing the amended complaint in the light most favorable to him, the allegations against Amazon fail under the first-sale doctrine. Plaintiff does not plausibly allege that the books sold through Amazon were anything other than authentic original copies protected under the first-sale doctrine. Aside from his own conclusory say-so, Plaintiff alleges no factual content that suggest that Amazon unlawfully copied Plaintiff's books or that any of the books that were sold through Amazon were counterfeits. Indeed, the Court has already concluded that Plaintiff's original complaint failed to adequately allege that the books sold through Amazon were counterfeited, *Hart*, 2015 WL

8489973, at *4, and Plaintiff has added no allegations in his amended complaint that would alter the Court's original conclusion. In fact, a review of the amended complaint demonstrates that Plaintiff has actually withdrawn many of his counterfeiting allegations. Ultimately, Plaintiff has failed to allege any plausible facts to support his allegation that Amazon counterfeited and then sold *Vagabond Natural* and *Vagabond Spiritual* to consumers. When a retailer—such as Amazon—"merely resells a genuine, unaltered good under the trademark of the producer, the use of the producer's trademark by the reseller will not deceive or confuse the public as to the nature, qualities, and origin of the good." *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 766 (6th Cir. 2005). Rather, "the consumer gets exactly what the consumer bargains for, the genuine product of the particular producer." *Sebastian,* 53 F.3d at 1075. Because Amazon's involvement in the reselling of Plaintiff's books is protected by the first-sale doctrine, Amazon is entitled to dismissal on Count II. *See, e.g., Quill Corp.*, 1998 WL 295502, at *2-4 (dismissing trademark infringement, false designation of origin, and state law claims pursuant to the first-sale doctrine when plaintiff "fail[ed] to allege any conduct on defendant's part significantly different . . . than mere stocking, displaying and reselling" permitted by established case law); *Rohn v. Viacom Int'l, Inc.*, No. 1:14-cv-83, 2015 WL 4395280, at *4-5 (W.D. Mich. July 15, 2015) (dismissing claims under the first-sale doctrine when "the resale of unaltered goods . . . purchased from retail stores . . . cannot, as a matter of law, cause consumer confusion").[3]

Even if Amazon's actions were not protected by the first-sale doctrine, Plaintiff's claim alleging consumer confusion fails for additional reasons. Amazon argues that the allegation that

---

[3] Plaintiff argues that the first sale doctrine "factually does not apply to *Vagabond Spiritual* since [he] never sold it to the public," (R. 73, Resp. at 14); however, at a minimum, the first sale doctrine bars Plaintiff's claims involving *Vagabond Natural* because Plaintiff admits that he sold copies of *Vagabond Natural* to the public, (R. 68, Am. Compl. ¶¶ 45-46, 60.) Regardless of whether the first sale doctrine bars the allegations pertaining to *Vagabond Spiritual*, as explained below, these allegations fail for other reasons.

Amazon caused confusion by suggesting that Plaintiff is affiliated with Amazon fails to state a "false endorsement" claim under the Lanham Act. (R. 70, Mem. at 6.) Amazon also argues that Plaintiff's IUDTPA claim is "the same as his false-endorsement claim under the Lanham Act and rises or falls with his Lanham Act claim." (*Id.* at 11.) Plaintiff alleges that despite the fact that he "does not have, nor has he ever had, a business relationship with" Amazon, the "display of both *Vagabond Natural* and *Vagabond Spiritual* is conduct by [Amazon] likely to cause confusion . . . as to the . . . affiliation, connection, involvement, or association between the parties." (R. 68, Am. Compl. ¶ 71; *see also id.* ¶¶ 85-87 (IUDTPA allegations).) While Plaintiff does not cite to any statutory authority, his claim appears to fall under 15 U.S.C. § 1125(a)(1)(A), the so-called "false endorsement" or "false association" section of the Lanham Act. "False endorsement occurs when a person's identity is connected with a product or service in such a way that consumers are likely to be misled about that person's sponsorship or approval of the product or service." *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 880 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010). "The key issue in a false endorsement case is whether defendant's use of the mark to identify its goods or services is likely to create confusion concerning the plaintiff's sponsorship or approval of those goods or services." *Id.* at 882-83 (citation and internal quotation marks omitted). "Plaintiff must be able to show that the public believe[s] that the mark's owner sponsored or otherwise approved of the use of the trademark." *Id.* (citation and internal quotation marks omitted).

Plaintiff's claim centers on individuals re-selling copies of his books through Amazon's website without Plaintiff's permission. The mere fact that Amazon offers a platform to third-party sellers to sell various products and, subsequently, those individuals sold Plaintiff's books, does not imply that Plaintiff has endorsed Amazon or has any specific affiliation with Amazon.

This is not the reality of commerce. As a comparison, a shopper at a bookstore does not automatically believe that just because a used book is appearing at the store, the author is expressly endorsing that store. The same is true for a book that is resold on Amazon. Ultimately, the amended complaint pleads no factual content to suggest that a consumer would believe or interpret the sale of Plaintiff's books through third-party sellers as an endorsement by Plaintiff of Amazon's website. At bottom, the Court simply cannot conclude that Plaintiff has alleged a plausible claim under the Lanham Act for false endorsement or, likewise, under the IUDTPA. *See, e.g., Id.* at 883 (dismissing false endorsement claim because "a commonsense reading of the complaint demonstrates that there could be no likelihood of confusion"); *Martin v. Wendy's Int'l, Inc.,* --- F. Supp.3d ---, 2016 WL 1730648, at *8 (N.D. Ill. May 2, 2016) (dismissing false endorsement claim because "it is not plausible that any consumer would be likely to be confused about whether plaintiff endorsed" the product when "[t]here is no language directly or indirectly suggesting that plaintiff endorsed defendants' products, nor do the plaintiff's name and record appear in a context that might, by its nature, plausibly mislead consumers to believe that plaintiff endorsed defendants' products").

Next, Amazon argues that the allegation that Amazon caused confusion in the marketplace by suggesting that the copies of Hart's books listed on Amazon were authentic fails to sufficiently allege a "false advertising" claim under the Lanham Act. (R. 70, Mem. at 7.) To support a false advertising claim under 15 U.S.C. § 1125(a)(1)(B) a plaintiff must allege, among other things, that a statement by a defendant is literally false or likely to deceive or confuse customers. *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 820 (7th Cir. 1999). Amazon argues that even assuming that Amazon "made an assertion to the public that the copies of Hart's books sold through Amazon were authentic, Hart has not plausibly alleged that such an assertion is

literally false or likely to deceive customers." (R. 70; Mem. at 7.) As previously concluded, Plaintiff alleges nothing to plausibly suggest that Amazon illegally copied his books or displayed counterfeit copies of his books. Thus, if Amazon represented to consumers that the books were authentic—as Plaintiff claims—he has not plausibly alleged that this statement is false or likely to deceive or confuse consumers. As such, these allegations fail to support a false advertising claim under the Lanham Act.

Ultimately, because Plaintiff does not sufficiently allege that Amazon's actions were likely to cause confusion among consumers, Plaintiff fails to state any cognizable claim under the Lanham Act, the common law, or the IUDTPA.[4] Thus, the Court dismisses Counts II and IV.

## II.    Negligence and Negligent Infliction of Emotional Distress Claims

Amazon next moves to dismiss Counts I and VII of the amended complaint. (R. 70, Mem. at 2-4.) The Court discerns little, if any difference, between Plaintiff's negligence and negligent infliction of emotional distress claims contained in Counts I and VII. In support of both claims, Plaintiff alleges that Amazon owed Plaintiff a duty pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512 *et seq.*, and because "Amazon by its statement 'Report Infringement' assumed and therefore owed a duty to plaintiff through its Affirmative Conduct of

---

[4] Although Amazon does not raise this argument in its motion, Plaintiff does not adequately plead the requisite injury for a false advertising claim. A false advertising claim requires allegations that a plaintiff "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." *Hot Wax*, 191 F.3d at 819. Plaintiff does not allege that Amazon's actions caused a direct diversion of sales of his books away from Plaintiff and to Amazon. Indeed, considering the fact that Plaintiff repeatedly asserts that he has "never sold *Vagabond Spiritual* in the market place," and that the books have "never been published to the public at large," (R. 68, Am. Compl. ¶¶ 42, 45; *see also id.* ¶¶ 49-51, 59, 66, 79, 107, 115), it is unclear how Plaintiff could ever allege that Amazon's actions caused him to lose sales of his books to Amazon. In addition, Plaintiff alleges in conclusory fashion that he "has suffered damage to the reputation and goodwill of his Tradename and Mark," but does not provide any other supporting factual content for this statement. *Compare Logan Graphic Prods., Inc. v. Textus USA, Inc.*, No. 02 C 1823, 2002 WL 31507174, at *4 (N.D. Ill. Nov. 8, 2002) (denying motion to dismiss false advertising claim where the counterclaimant alleged that "it will be injured by way of lost sales and lost opportunities" and that there has been damage to "its reputation and goodwill at the critical point when it is attempting to enter into a new product market").

Posting its 'Report Infringement' Webpage which Hart utilized." (R. 68, Am. Compl. ¶¶ 50, 52; *see also id.* ¶¶ 105, 108, 111.) Plaintiff also alleges that Amazon breached its duty to him when it "sold Counterfeits of *Vagabond Spiritual*," (*id.* ¶ 53), and "failed to remove its Commercial display of *Vagabond Spiritual* despite plaintiff's notifications," (*id.* ¶ 54). In addition, Plaintiff alleges that Amazon breached its duty to him when it "failed to keep a proper financial accounting of Ads Contemporaneously displayed with Hart's identity as associated with *Vagabond Spiritual*," (*id.* ¶ 60), and failed to obtain his "Consent to use the Publicity and/or identity of his personal name, Common Law Trade Name and trademark," (*id.* ¶ 62). (*See also id.* ¶¶ 109-110, 112, 116, 118.) Finally, Plaintiff alleges that Amazon's actions have caused him an array of emotional injuries. (*Id.* ¶¶ 65, 67; *see also id.* ¶¶ 121, 123.) Amazon argues that Plaintiff's claims fail because he does not adequately allege an injury. (R. 70, Mem. at 2-4.) Because Plaintiff's allegations in these claims are nearly identical and a similar standard applies to both claims, the Court will consider these two claims together.

Illinois law imposes different standards for "direct" and "bystander" victims of negligent infliction of emotional distress. Direct victims of negligent infliction of emotional distress are "the persons that the negligent conduct has directly affected." *Barnes v. Anyanwu*, 391 F. App'x 549, 552 (7th Cir. 2010). "Illinois courts treat claims by direct victims of negligent infliction of emotional distress under the same approach used for standard negligence claims." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 703 (7th Cir. 2009) (citing *Corgan v. Muehling*, 574 N.E.2d 602, 606 (Ill. 1991)). "In other words, a party advancing a negligent infliction of emotional distress claim must demonstrate a defendant's duty, as well as a breach that proximately caused the claimant an injury." *Id.* In addition, under Illinois law, "a direct victim of alleged negligent infliction of emotional distress must satisfy the 'impact' rule." *Id.* Under the

13

impact rule, a direct victim may not recover . . . unless the emotional distress was accompanied by a contemporaneous physical injury to or impact on the plaintiff." *Id.* (citation and internal quotation marks omitted).

Here, Plaintiff's amended complaint and response to the motion to dismiss demonstrate that he is claiming to be a victim of Amazon's actions directly and not as a bystander; thus, the impact rule applies. (*See, e.g.*, R. 68, Am. Compl. ¶ 123; R. 73, Resp. at 7.) Yet Plaintiff has included no allegations to plausibly suggest "a contemporaneous physical injury or impact" due to Amazon's alleged negligence. *Barnes*, 391 F. App'x at 554. Plaintiff alleges that he was "intangibly harmed, emotionally impacted upon, disrupted in his normal sleep patterns, damaged in his person and therein experience a violation of his rights akin to being raped, . . . headaches, mental anguish, depression, anxiety as well as pain and suffering which are ongoing." (R. 68, Am. Compl. ¶ 123.) These claims are simply insufficient under the existing impact rule standard to establish a claim for negligent infliction of emotional distress. *See, e.g.*, *Arce v. Chi. Transit Auth.*, 14 C 102, 2015 WL 3504860, at *10 (N.D. Ill. June 2, 2015) ("[Plaintiff] has not alleged any contemporaneous physical injury or impact, and so his claim for negligent infliction of emotional distress also fails."); *Wallis v. Card Servs. Int'l, Inc.*, No. 10 C 7250, 2012 WL 1866374, at *5 (N.D. Ill. May 22, 2012) ("[Plaintiff's] alleged injuries—'immense emotional pressure,' the loss of business, reputation, etc.—do not constitute 'contemporaneous physical contact' or 'physical injury or illness' sufficient to state a claim for negligent infliction of emotional distress."); *Michalezewski v. CSX Transp., Inc.*, No. 05 C 3363, 2007 WL 2875627, at *7 (N.D. Ill. Sept. 30, 2007) (noting that "sleeplessness, discomfort, fear, and regret are exactly the sorts of intermediate effects that consistently fail to meet the high bar of [negligent infliction of emotional distress] impact"). As a result, Plaintiff's claims for negligence and negligent

infliction of emotional distress fail. Thus, the Court dismisses Plaintiff's negligence (Count I) and negligent infliction of emotional distress (Count VII) claims.

## III. ICFA Claim

Amazon next moves to dismiss Plaintiff's ICFA claim arguing that the ICFA claim fails because (1) he does not allege that Amazon engaged in a deceptive act, and (2) that he lacks standing to assert this claim because he fails to allege actual damages. (R. 70, Mem. at 8-10.) In support of his ICFA claim, Plaintiff alleges that Amazon continually misrepresented to the public that the books sold on the website were authentic, (R. 68, Am. Compl. ¶¶ 79, 81), and that Amazon falsely stated that it would remove the postings of his books within 2-3 days after notification but the removal took significantly longer, (*id.* ¶ 80).

To adequately plead a private cause of action under the ICFA, a plaintiff must allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). In addition, when a plaintiff alleges fraud or misrepresentations in his allegations, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). In such cases, "a plaintiff must allege with particularity the who, what, when, where, and how of the fraud or misrepresentation." *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 909 (N.D. Ill. 2012) (citation and internal quotation marks omitted).

Under those standards, Plaintiff fails to allege that Amazon engaged in deceptive or unfair acts. As previously discussed, Plaintiff's claims do not plausibly suggest that Amazon unlawfully copied Plaintiff's books or knew the books were counterfeits, yet tried to pass them

off as authentic. If these allegations of deception and wrongdoing do not pass muster under Rule 8, they certainly do not suffice under the heightened pleading standard of Rule 9(b). *See e.g.*, *Camasta*, 761 F.3d at 738-39 (affirming dismissal of ICFA claim when the plaintiff's "sparse allegations" failed under Rule 9(b) and were "insufficient to substantiate a finding of a deceptive or unfair act or promise" (internal quotation marks omitted)); *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1007 (N.D. Ill. 2015) ("[Plaintiff's] ICFA allegations do not even rise to the level of plausibility, let alone Rule 9(b)'s particularity standard.").

With respect to the allegation that Amazon was deceptive when it told Plaintiff that it would remove his books from its website in 2-3 days, Amazon argues that the allegation fails because Plaintiff does not allege "that Amazon knew that its statement was false." (R. 70, Mem. at 9.) Amazon is correct. "[N]ot all misrepresentations or omissions are actionable [under the ICFA]; only those for which culpability can be shown." *Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 807, 817 (Ill. App. Ct. 1998). "In claiming a violation of the Act, the perpetrator must have knowledge of the misrepresentation or omission and the misrepresentation or omission must be deceptive or unfair." *Id.* Plaintiff does not allege with particularity that Amazon knew that it was making a misrepresentation or being deceptive when it stated that it would take the book listings down in a matter of days. While Plaintiff does allege that "defendant . . . engaged in a deceptive act" when it told Plaintiff that "it typically takes 2-3 days for a listing to disappear once it has been removed from our catalog," (R. 68, Am. Compl. ¶ 80), this allegation is merely a legal conclusion with no factual support. As such, Plaintiff has failed to allege with sufficient particularity that Amazon engaged in a deceptive act. *See, e.g.*, *Camasta*, 761 F.3d at 738 (concluding that the plaintiff's allegations were "insufficient to substantiate a finding of a 'deceptive or unfair act or promise' "); *Elson*, 691 N.E.2d at 817 (dismissing ICFA

claim because the complaint "fails to sufficiently plead the 'deceptive act' of defendant that constitutes the alleged consumer fraud").

Even if Plaintiff adequately alleged that Amazon engaged in deceptive acts, Plaintiff's claim also fails because he does not allege the requisite damages. "When the plaintiff is a private party . . . , an action brought under the ICFA requires the plaintiff to show he suffered 'actual damage' as a result of the defendant's violation of the act." *Camasta*, 761 F.3d at 739 (citation and internal quotation marks omitted); *see also Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 31 (Ill. App. Ct. 2010) (observing that a plaintiff must allege "actual damages" and the "actual damages must arise from purely economic injuries" (citation and internal quotation marks omitted)). "Actual damages must be calculable and measured by the plaintiff[']s loss." *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009) (citation and internal quotation marks omitted).

Again Plaintiff alleges that as a result of Amazon's actions he has "suffered injury to the intangible aspects of his person, i.e., mental anguish, emotional distress and, damage to his property as well as the reputation of Henrietta Press." (R. 68, Am. Compl. ¶ 83.) Plaintiff's allegations of "emotional damages do not constitute actual damages under the ICFA." *Thrasher-Lyon*, 861 F. Supp. 2d at 913; *see also Morris*, 911 N.E.2d at 1054 ("There is no cause of action under the [ICFA] when a plaintiff alleges only aggravation and not actual damages."); *Price v. Seterus, Inc.*, No. 15 C 7541, 2016 WL 1392331, at *7 (N.D. Ill. Apr. 8, 2016) (dismissing ICFA claim and concluding that "[n]either attorney's fees nor emotional damages constitute actual damages under the ICFA"). In addition, Plaintiff's allegations that he suffered "damage to his property" and damage to his reputation, (R. 68, Am. Compl. ¶ 83), are also insufficient because they are conclusory and lack any supporting factual content. Nowhere in the amended complaint

does Plaintiff attempt to articulate or quantify the damages that he actually suffered. Ultimately, these allegations do not put Amazon on notice of the amount and exact nature of Plaintiff's injury. *See, e.g.*, *Camasta*, 761 F.3d at 740 (affirming trial court's dismissal of ICFA claim when damages allegations were "mere guesses void of any substantial analysis"). Thus, the Court dismisses the ICFA claim (Count III).

## IV. Promissory Estoppel Claim

Amazon also argues that Plaintiff has failed to properly allege all of the elements of a promissory estoppel claim. (R. 70, Mem. at 12-14.) In support of this claim, Plaintiff alleges that Amazon made two separate promises to Plaintiff, that he relied upon these promises and, that as a result of its failure to keep its promises, Amazon "injured the intangible aspects of Hart's person." (R. 68, Am. Compl. ¶¶ 89-93.)

"The Illinois Supreme Court has delineated a four-part test to determine whether a claim premised on promissory estoppel grounds may succeed, which requires a plaintiff to prove that '(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment.' " *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 676-77 (7th Cir. 2005) (quoting *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990)). The Court need only consider the first and second element of the promissory estoppel claim because Plaintiff does not sufficiently allege these elements.

Plaintiff alleges that Amazon made two promises; however, neither of these allegations can plausibly suggest that an unambiguous promise was made to him. "Promissory estoppel is usually based on a promise of future action, not a representation of fact." *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 680 (N.D. Ill. 2005). In addition, "[a] promise for

purposes of promissory estoppel typically involves a declaration that one will do or refrain from doing something specified." *Id.* (citation and internal quotation marks omitted).

First, Plaintiff alleges that "Amazon made an unambiguous promise to Hart when it stated to him 'Report Infringement. This form is intended for use by intellectual property rights owners . . . to notify Amazon of alleged intellectual property infringement such as copyright and trademark concerns." (R. 68, Am. Compl. ¶ 89.) In support of this allegation, Plaintiff attaches two screenshots of the "Report Infringement" pages that were posted on Amazon's website in 2014 and 2015. (*See* R. 68, Exs. 3 & 4 to Am. Compl.) The Court has reviewed these exhibits and cannot identify a single statement that could be construed as a promise directed at Plaintiff. Simply put, nowhere in these screenshots does Amazon commit itself to taking a specific action for the benefit of Plaintiff or refrain from doing something for the benefit of Plaintiff. Similarly, Plaintiff does not identify a specific promise or articulate exactly what the nature of the promise was that Amazon allegedly conveyed in its "Report Infringement" pages. Ultimately, the existence and content of the "Report Infringement" pages, without any further explanation, does not plausibly suggest that Amazon made an unambiguous promise to Plaintiff.

Second, Plaintiff alleges that "Amazon made an unambiguous promise" to Plaintiff that it would remove his books from its website within 2-3 days of receiving Plaintiff's request to remove the books. (R. 68, Am. Compl. ¶ 90.) Plaintiff attaches the correspondence that is the basis for Plaintiff's claim. (R. 68, Ex. 10 to Am. Compl.) On January 21, 2015, Amazon wrote:

Dear Reginald,

Thank you for your message. Please be advised that we are in the process of removing [*Vagabond Natural* and *Vagabond Spiritual*] . . . from Amazon.com. . . .

It typically takes 2-3 days for a listing to disappear once it has been removed from our catalog. We trust this will bring this matter to a close.

(*Id.*)

The correspondence simply states that Amazon is in the process of removing the posting and that the removal process typically takes a few days. While Amazon indicates that it was in the process of removing the postings—which, as Plaintiff alleges, were in fact eventually removed—Amazon does not *unambiguously* promise to Plaintiff that the process would only take 2-3 days. This statement is a mere estimate. These allegations do not articulate a clear, definite promise that would support a promissory estoppel claim. *See, e.g., Bethany Pharmacal Co. v. QVC, Inc.,* 241 F.3d 854, 861 (7th Cir. 2001) (promissory estoppel claim failed where there was no unambiguous words of promise or obligation); *David v. Bayview Loan Servicing, LLC,* No. 15-cv-9274, 2016 WL 1719805, at *5 (N.D. Ill. Apr. 29, 2016) (dismissing promissory estoppel claim because the plaintiff did not identify any statements that could be construed as an unambiguous promise).

Even if Plaintiff sufficiently alleges an unambiguous promise, Plaintiff has not sufficiently alleged that he relied on any of Amazon's promises. The amended complaint states that Plaintiff "reasonably relied on Amazon's 'Report Infringement Webpage' which he repeatedly used to report to defendant and, plaintiff reasonably relied on Amazon's email that it would 'remove its listings within 2-3 days.' " (R. 68, Am. Compl. ¶ 91.) Plaintiff provides no additional factual content regarding the nature of his reliance on Amazon's alleged promises or, further, that he detrimentally relied on these alleged promises. Ultimately, Plaintiff's allegation of reliance is formulaic, conclusory, and a " 'naked assertion[]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Thus, Plaintiff's promissory estoppel claim (Count V) is dismissed.

## V.     IRPA Claim

Amazon also argues that Plaintiff fails to state a claim under the IRPA because he does not plausibly allege that the books were counterfeits and he cannot maintain an IRPA claim merely based on the fact that Amazon listed Plaintiff as the author of these books alongside advertisements. (R. 70, Mem. at 14-15.) In support of his IRPA claim, Plaintiff repeats that Amazon displayed counterfeit copies of Plaintiff's books and therefore engaged in "Commercial Speech [that] was not Truthful under the IRPA." (R. 68, Am. Compl. ¶ 95.) In addition, Plaintiff alleges that Amazon misappropriated Plaintiff's identity when it "Monetized and/or ran Ads with its Web display of *Vagabond Natural* and *Vagabond Spiritual*." (*Id.* ¶ 97.) Plaintiff further alleges that he never gave Amazon permission to use his identity or likeness. (*Id.* ¶ 98.)

As an initial matter, the Court has already concluded that Plaintiff does not plausibly allege that Amazon unlawfully copied *Vagabond Natural* and *Vagabond Spiritual* or knew that other individuals were selling counterfeit copies of these books. Thus, any IRPA claim based upon this conduct fails. As to Plaintiff's allegations that Amazon unlawfully ran ads alongside copies of Plaintiff's books, (R. 68, Am. Compl. ¶¶ 97-100), Amazon argues that "[t]he only mention of [Plaintiff] on the Amazon webpages that he complains of is to identify him as the author of the works" and listing the identity of an author is not actionable under the IRPA. (R. 70, Mem. at 14-15.) Amazon is correct. The amended complaint's allegations are very similar to the allegations in the original complaint that this Court previously found deficient. *See Hart*, 2015 WL 8489973, at *7. The IRPA provides the "right to control and to choose whether and how to use an individual's identity for commercial purposes." 765 ILL. COMP. STAT. 1075/10. As such, the "use [of] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent" is prohibited. 765 ILL. COMP. STAT.

1075/30. However, the IRPA contains several exemptions and expressly "does not apply to . . . use of an individual's name in truthfully identifying the person as the author of a particular work." 765 ILL. COMP. STAT. 1075/35(b)(3). Plaintiff's allegations and exhibits show that the only mention of Plaintiff's identity on these webpages is that he is the author of *Vagabond Natural* and *Vagabond Spiritual*—a fact that Plaintiff freely admits. *See Hart*, 2015 WL 8489973, at *7; *see also* R. 68, Am. Compl. ¶ 2. Plaintiff has not included any additional allegations that plausibly suggest that Amazon unlawfully used Plaintiff's identity for commercial purposes. Because correctly identifying the author of a piece of work cannot be considered an IRPA violation, Plaintiff's IRPA claim (Count VI) must be dismissed.

## VII.    Opportunity to Replead

The dismissal of Plaintiff's claims will be with prejudice for two reasons. First, Plaintiff's response does not address Amazon's request to dismiss the amended complaint with prejudice, does not request leave to replead, and does not attach a proposed second amended complaint. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court erred in not giving it leave to amend where the plaintiff did not request leave to amend). Second, Plaintiff has already been informed of the deficiencies in his claims and has been given ample time and opportunity to amend his complaint. The Court specifically identified the deficiencies in Plaintiff's allegations in its December 2015 opinion and gave him a chance to replead. *Hart*, 2015 WL 8489973, at *9. He has not remedied those deficiencies. Ultimately, it is clear that Plaintiff cannot state a claim for relief. *See Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012) ("District courts have broad discretion to deny leave to amend . . . where the amendment would be futile."); *Smith v. Ill. Sch. Dist. U-46*, 120 F. Supp. 3d 757, 777 (N.D. Ill. 2015) ("Having amended his complaint twice in

response to two previous motions to dismiss, Smith has had three opportunities to plead his claims, so dismissal of his federal claims with prejudice and without an opportunity to amend is warranted."). The Court has expressed sympathy for Plaintiff's frustrations with Amazon in its previous order, *Hart*, 2015 WL 8489973, at *9, and it recognizes that Amazon should have removed the listings of Plaintiff's books faster than it did; however, Plaintiff does not allege any factual content that would support a cognizable claim under the law. Thus, the Court concludes that any amendment would be futile and the dismissed amended complaint is with prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Amazon's motion to dismiss (R. 69). This case is dismissed with prejudice.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: June 13, 2016**